UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DONALD EDMOND,**

    **Plaintiff,**

    **v.**

**AMERICAN EDUCATION SERVICES,**

    **Defendant.**

Civil Action No. 10-0578 (JDB)

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion for sanctions, to dismiss, or for summary judgment. For the reasons discussed below, the motion for summary judgment will be granted.

### I. BACKGROUND

Plaintiff and co-borrower Doris Muellner obtained a TERI Graduate Loan in August 2005 from Bank of America, N.A. while plaintiff was attending Suffolk University Law School. *See* Am. Compl. ¶ 2; Defendant's Memorandum of Points and Authorities in Support of Motion for Sanctions[] Motion to Dismiss or in the Alternative Motion for Summary Judgment ("AES Mem.") at 6; *see also* Memorandum of Law in Support of the Motion to Dismiss Submitted by the Pennsylvania Higher Education Assistance Agency/American Education Services [Dkt. #4-1], Ex. A (Cosigned Loan Request/Credit Agreement – Information Page). Defendant American

Education Services ("AES") serviced the loan.[1]  Am. Compl. ¶ 3; AES Mem. at 7.

## A. Plaintiff's Allegations

According to plaintiff, AES erroneously reported the loan delinquent to three credit reporting agencies, *see* Am. Compl. ¶¶ 13-14, and thus is responsible for the publication of "factually inconsistent statements . . . on or around the period of August, 2009 through December, 2009," *id*. ¶ 37, which have "injured and continue to injure [him]," *id.* ¶ 49.  Plaintiff further has alleged that, "[t]o the extent that AES knew or should have known the harm its action would cause . . . [its] actions are malicious." *Id.* ¶ 48.  He demands damages of $100,000 "for defamatory statements for each publication," *id.* at 15, and injunctive relief calling for "[r]emoval of all delinquencies previously reported," *id*. at 16.

## B  Defendant's Representations

Plaintiff had been granted a forbearance which was to expire on May 30, 2009.  AES Mem., Affidavit of Shelly K. Bowman in Support of [Defendant's] Motion for Summary Judgment ("Bowman Aff.") ¶ 2.  On or about April 16, 2009, AES notified plaintiff of the impending end of the forbearance period. *Id.*, Bowman Aff., Ex. 6 (Letter to plaintiff from AES dated April 16, 2009).  On June 1, 2009, plaintiff requested a hardship forbearance. *Id.*, Bowman Aff. ¶ 3; *see id.*, Boman Aff., Ex. 7 (Hardship Forbearance Form for Federal Family Education Loan Programs Stafford/SLS/PLUS/Consolidation Loans dated June 1, 2009).  AES denied the request because plaintiff had submitted it on the incorrect form, *id.*, Bowman Aff. ¶ 4, and sent plaintiff a blank copy of the correct form, *id.*, Bowman Aff., Ex. 9 (Letter from AES to

---

[1]   "[T]he Pennsylvania Higher Education Assistance Agency . . . operates commercially under the fictitious name 'American Education Services' ('AES')."  AES Mem., Bowman Aff. ¶ 1.

plaintiff dated June 20, 2009 with attachments). Its notice to plaintiff included the following statement:

> It is important to continue to make payments until your alternative repayment option has been approved . . . . If your loan[] becomes delinquent, collection activities will continue until the account is brought current either by payment or a retroactively applied forbearance. *Any forbearance retroactively applied will not result in the retraction of any negative reports on your credit file.*

*Id.*, Bowman Aff., Ex. 9 (emphasis added). Plaintiff's second request for a hardship forbearance on July 8, 2009, again submitted on the incorrect form, was denied. *Id.*, Bowman Aff. ¶¶ 6-7; *see id.*, Bowman Aff., Ex. 11 (Letter from AES to plaintiff dated July 14, 2009). "As of July 31, 2009, []plaintiff had made no payments to the account," *id.*, Bowman Aff. ¶ 8, and as a result, "[p]laintiff was reported to the national credit reporting agencies as thirty (30) days delinquent," *id.*, Bowman Aff. ¶ 9. After having made no payment by the end of August 2009, "[p]laintiff was reported to the national credit reporting agencies as sixty (60) days delinquent." *Id.*, Bowman Aff. ¶ 10.

Plaintiff's third request for a forbearance was submitted on the proper form. *Id.*, Bowman Aff., Ex. 13 (Letter from plaintiff to AES dated September 3, 2009, and Privately Insured Loan Repayment Option Form). On September 11, 2009, AES "granted the forbearance request and retroactively applied the forbearance to June 1, 2009 ending on November 30, 2009." *Id.*, Bowman Aff. ¶ 12; *see id.*, Bowman Aff., Ex. 14 (Deferment/Forbearance Loan Declaration dated September 11, 2009).

## C. Discovery and Court Proceedings

The Court granted in part and denied in part defendant's first motion to dismiss, *see generally Edmond v. Am. Educ. Servs.*, No. 10-0578, 2010 WL 4269129 (D.D.C. Oct. 28, 2010),

and the sole claim remaining is one for defamation (Count III). AES filed an Answer to plaintiff's Amended Complaint on November 12, 2010. One week later, the Court issued an Order setting an initial scheduling conference for January 7, 2011 at 9:00 a.m. Plaintiff failed to appear. Nevertheless, on January 7, 2011, the Court issued a Scheduling Order which, among other dates, set March 31, 2011 as the deadline for all discovery and set a post-discovery status hearing for April 4, 2011 at 9:00 a.m.

Defendant's counsel served initial disclosures on plaintiff on January 21, 2011, *see* AES Mem., Ex. 3 (Defendant's Initial Disclosures), and requests for written discovery on February 2, 2011, *id.*, Ex. 4 (Certificate of Discovery). Counsel sent these documents to plaintiff by first-class mail and he represents that the mail had not been returned as undeliverable. AES Mem. at 2. When he did not receive a timely response, counsel contacted plaintiff, who stated that he had not received the materials. *Id.* Plaintiff asked defendant's counsel to send duplicates to another address that plaintiff provided and counsel complied. *Id.*; *see id.* Ex. 5 (e-mail exchange). According to defendant's counsel, plaintiff requested additional time to respond to the discovery requests, and counsel asked that plaintiff respond by March 31, 2011. AES Mem. at 2. Plaintiff countered that "no such [discovery] materials are in [his] possession," and he remarked that "[d]efendant offered [no] proof said materials were mailed or received." Memorandum of Law in Support of Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Pl.'s Opp'n") at 2.

Plaintiff did not appear for the post-discovery status hearing on April 4, 2011. He neither notified the Court of his expected absence, sought to reschedule the hearing nor otherwise explained his failure to appear. The Court continued the matter to April 14, 2011 at 9:00 a.m.,

and in addition to electronic notice of the new hearing date, the deputy Clerk of Court mailed a copy of the docket entry to plaintiff at his address of record.[2] Plaintiff did not appear on April 14, 2011, and the Court issued an Order setting deadlines for dispositive motions.[3] In addition to electronic notice, the deputy Clerk of Court sent a copy of the April 14, 2011 Order to plaintiff by certified mail.

According to defendant's counsel, as of May 6, 2011, the date on which the instant motion was filed, plaintiff had not responded to AES's discovery requests. AES Mem. at 2. "[O]ther than [AES's] initial disclosures . . ., no discovery has taken place in this case." *Id.* at 6. Plaintiff reports that he now "is prepared to fully comply with an amended discovery process," Pl.'s Opp'n at 2, and he requests additional time for the completion of discovery, *see id.* at 5, 8.

## II. DISCUSSION

### A. *Defendant's Motion for Sanctions and Motion to Dismiss*

The Federal Rules of Civil Procedure provide for the imposition of sanctions on "a party . . . [who] fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Such sanctions include "dismissing the action . . . in whole or in part," Fed. R. Civ. P. 37(b)(2)(A)(*v*), and "prohibiting the disobedient party from supporting . . . [a] designated claim[] . . ., or from introducing designated matters in evidence," Fed. R. Civ. P. 37(b)(2)(A)(*ii*).

---

[2] Plaintiff had been granted a CM/ECF password on or about June 22, 2010, and thereby "consent[ed] to electronic service of all documents," and became "responsible for monitoring [his] e-mail account[], and, upon receipt of notice of an electronic filing, for retrieving the noticed filing." LCvR 5.4(b)(6).

[3] Plaintiff left a voicemail message with a court reporter explaining that his car broke down en route from North Carolina to Washington, DC, and that he would not arrive on time for the hearing.

AES first argues that it is prejudiced by plaintiff's failure to supply timely responses to its discovery requests. *See* AES Mem. at 2-3. Faced with only "the bald allegations of the Amended Complaint," the absence of any evidence to support plaintiff's allegations is "putting [AES] at a severe disadvantage and prejudicing the defense." *Id.* at 2. Next, AES asserts that, by failing to appear for the post-discovery status hearings, plaintiff's "misconduct . . . has burdened the judicial process," and any extension of time for plaintiff's discovery responses serves only to "cause even further delay." *Id.* at 4. Lastly, AES argues that the imposition of discovery sanctions would deter such conduct in the future. *Id.* For these reasons, AES asks that the Court either dismiss the Amended Complaint or "prohibit[ plaintiff] from the introduction of any evidence not previously provided to [AES]." *Id.* at 5. In the alternative, AES moves to dismiss under Fed. R. Civ. P. 41(b) for plaintiff's failure to comply with court orders and otherwise to prosecute this case. *See* AES Mem. at 5-6. "This is an uncomplicated case and at a certain point, [AES] ought to be freed of the anxiety of litigation that . . . plaintiff has failed to diligently pursue." *Id.* at 6.

Plaintiff generally denies having committed any act of misconduct, *see* Pl.'s Opp'n at 3-4, and attributes his failure to engage in discovery to "severe economic hardship resulting from the unexpected and dire circumstances faced by [plaintiff]" from October 2010 through April 2011, *id.* at 3; *see id.* at 2 n.1.[4] These circumstances, he claims, rendered him completely unable "to access vital basic resources to continue litigation," *id.* at 4, and thus "adversely affected this case leading to delays and unforeseen inabilities to complete the discovery process as

---

    [4] Plaintiff's opposition provides no explanation whatsoever as to the hardship he allegedly suffered during this period of time; instead he directs the Court's attention to filings made in a related case. *See Edmond v. Rogers*, No. 10-0495 (D.D.C. filed Mar. 26, 2010).

scheduled," *id.* at 2. Any delay, plaintiff argues, was "the direct result of abhorrent circumstances," and was not of such duration that it has prejudiced AES. *Id.* at 4. He claims that he "is now in a position to resume full compliance and diligence" if the Court were to "extend discovery . . . and allow this case to move forward." *Id.* at 5.

The Court "has broad discretion to impose sanctions for discovery violations." *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976) (per curiam)). "Any sanction must be just," *Ins. Co. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (internal quotation marks omitted), and proportionate to the discovery violation committed, *see Bonds*, 93 F.3d at 808. "'[O]ur system favors the disposition of cases on the merits, [and] dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile." *Shea v. Donohoe Constr. Co., Inc.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986) (quoting *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 186-87 (D.C. Cir. 1985)); *see Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990) (acknowledging that "dismissal may be an unduly severe sanction for a single episode of misconduct" which generally "is in order only when lesser sanctions would not serve the interest of justice"). In determining whether to impose a discovery sanction, a court considers prejudice to the other party, prejudice to the judicial system, and the need to deter similar conduct in the future. *See Bonds*, 93 F.3d at 808; *see also Moore v. Chertoff*, 255 F.R.D. 10, 32 (D.D.C. 2008).

The Court deems dismissal too severe a discovery sanction in this case. Plaintiff's discovery failures have caused AES inconvenience and the unnecessary expenditure of resources, but are not of such magnitude as to have caused it actual prejudice. Plaintiff's failure

to appear for court hearings has not gone unnoticed; nevertheless, the Court is not convinced that a discovery sanction is useful either to address any prejudice to the judicial system or to deter similar conduct in the future. AES's motion to dismiss and for sanctions under Rules 37(b)(2)(A)(*v*) and 41(b) will be denied.

Additionally, because the Court is wholly unpersuaded by arguments put forth in plaintiff's opposition to AES's motion for sanctions, the request for additional time to complete discovery will be denied. Plaintiff is not the typical *pro se* litigant, and "this is not a case of an unwitting litigant made to suffer for the sins of [his] attorney." *Bristol Petroleum*, 901 F.2d at 168. As plaintiff has mentioned many times, he is a law school graduate, and his familiarity with rules of civil procedure and the parties' obligation to comply with Court orders can be presumed. Nothing in the record of this case reflects any attempt on plaintiff's part to notify the Court of his inability to litigate this matter. Plaintiff neither filed a motion for a protective order, sought amendment of the scheduling order, advised opposing counsel of his situation, requested a stay of proceedings, nor moved to reschedule the initial scheduling conference and post-discovery status hearings. Discovery has closed, and plaintiff fails to present any legal argument or to show good cause warranting an extension of time for discovery.

### B. Defendant's Motion for Summary Judgment

#### 1. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to

-8-

interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal citations omitted).

In considering whether there is a triable issue of fact, a court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial," *id*. at 248, that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *See id.* at 1242-43; *Anderson*, 477 U.S. at 251 (stating that the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Instead, he must "come forward with specific facts showing that there is a *genuine issue for trial*." *Id*. at 587 (internal quotation marks and citation omitted) (emphasis in original).

2. <u>Plaintiff Does Not Show that the Report of Delinquency is False</u>

Under District of Columbia law, a plaintiff making a claim of defamation must show:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (quoting *Crowley v. N. Am. Telecomms. Assoc.*, 691 A.2d 1169, 1173 n.2 (D.C. 1997) (quoting *Prins v. Int'l Tel. & Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991)) (internal quotation marks omitted). To be actionable, [a] statement[ ] . . . must have been both false and defamatory." *Columbia First Bank v. Ferguson*, 665 A.2d 650, 655 (D.C. 1995) (citing *Kendrick v. Fox Television*, 659 A.2d 814, 819 (D.C. 1995)). In a defamation action, then, "[t]he task is to 'determine as a threshold matter whether a challenged statement is capable of a defamatory meaning; and whether it is verifiable – that is, whether a plaintiff can prove that it is false.'" *Lane v. Random House, Inc.*, 985 F. Supp. 141, 151 (D.D.C. 1995) (quoting *Moldea v. New York Times Co.*, 22 F.3d 310, 316-17 (D.C. Cir. 1994)). "Truth is an absolute defense to [a] defamation claim[]," *Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004) (citing *Olinger v. Am. Sav. & Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969)), and a defendant may attack the falsity prong of a plaintiff's claim by demonstrating the substantial truth of the allegedly defamatory statement, *Prins*, 757 F. Supp. at 91-92 (citations omitted).

"A statement is 'defamatory' if it tends to injure the plaintiff in his . . . trade, profession or community standing, or lower him . . . in the estimation of the community." *Moss v.*

*Stockard*, 580 A.2d 1011, 1023 (D.C. 1990). A statement that a person does not pay his debts timely, as is the case here, is capable of a defamatory meaning. *See Holt v. Boyle Bros., Inc.*, 217 F.2d 16, 17 (D.C. Cir. 1954) (finding that a letter to plaintiff's employer stating that plaintiff "refused to pay a just debt[] was plainly defamatory"); *Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 56 (D.D.C. 2010) (finding that "statements [of plaintiff's default on a mortgage] to credit bureaus made plaintiff appear, at the very least, both irresponsible and financially insolvent," and "a reasonable person might consider one's character defamed by such a portrayal").

AES argues that plaintiff "has not and cannot offer any evidence to support any of the elements to support a claim for defamation." AES Mem. at 9. Specifically, AES asserts that plaintiff's "account was in fact delinquent" because, when reports to the credit agencies were made, "the forbearance had not been granted and no payments had been made on the account." *Id.* Further, AES argues that plaintiff provides "no evidence to demonstrate that he has suffered any damages as a result of the alleged defamation." *Id.* at 10.

At this stage of the proceedings, it is plaintiff's burden to establish the existence of a genuine issue of material fact in dispute – here, it is expected that he would point to materials in the record, such as depositions, documents, or interrogatory answers, to challenge AES's assertion that his loan was delinquent at the time AES submitted its reports to the credit reporting agencies. Instead, plaintiff merely claims to have "physical evidence that is likely corroborated by the discovery materials defendant has yet to provide" him, from which he apparently intends to show that "the alleged publication was false." Pl.'s Opp'n at 7; *see also* Addendum to Opposition to Defendant's Motion to Dismiss or in the Alternative Summary

Judgment ("Pl.'s Addendum") at 4. He neither describes the physical evidence in his possession nor indicates what corroborating discovery materials AES may have. Plaintiff's opportunity to obtain information through discovery has passed, leaving him with an opposition resting solely on the allegations of his Amended Complaint. *See* Pl.'s Opp'n at 6-7. Plaintiff does not "come forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus.*, 475 U.S. at 587 (emphasis removed), and therefore he cannot withstand AES's summary judgment motion.[5] *See Jolevare v. Alpha Kappa Alpha Sorority, Inc.*, 521 F. Supp. 2d 1, 14 (D.D.C. 2007) (granting summary judgment for defendant on defamation claim where plaintiffs did not "raise[] a genuine issue of material fact as to the falsity of the organization's publication of their suspensions for engaging in what the sorority properly concluded amounted to hazing").

## III. CONCLUSION

The Court concludes that, although discovery sanctions are not warranted, plaintiff has not shown good cause to extend the time for discovery. AES has met its burden on summary judgment by showing that the reports of delinquency of plaintiff's student loan in 2009 were not false, and that it is entitled to judgment as a matter of law. Accordingly, AES's motion for sanctions and to dismiss will be denied, and its motion for summary judgment will be granted. An Order accompanies this Memorandum Opinion.

---

[5] Plaintiff's failure to make out a defamation claim also dooms any recovery under the Fair Credit Reporting Act, *see* 15 U.S.C. §§ 1681-1681x, which allows a consumer to bring a defamation suit "with respect to the reporting of information . . . to a consumer reporting agency" if such information is "false [and] furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).

|  |  |
|---|---|
| DATE: November 4, 2011 | _____/s/_____<br>JOHN D. BATES<br>United States District Judge |